**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: EASTON PETROLEUM COMPANY,
INC.,
Debtor.

FRONT STREET PROPERTIES,
Plaintiff-Appellant,

v.

EASTON PETROLEUM COMPANY, INC.,

No. 97-1619

Defendant-Appellee,

UNSECURED CREDITORS COMMITTEE, of
Easton Petroleum Company,
Incorporated,
Party in Interest-Appellee,

and

OFFICE OF US TRUSTEE,
Party in Interest.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-97-70-AMD, BK-91-1746-5-ESD)

Argued: October 1, 1997

Decided: December 3, 1997

Before WILKINSON, Chief Judge, and WILKINS
and LUTTIG, Circuit Judges.

_____

Vacated and remanded for further proceedings by unpublished opinion. Judge Wilkins wrote the opinion, in which Chief Judge Wilkinson and Judge Luttig joined.

_____

**COUNSEL**

**ARGUED:** Joseph Schiffer Kaufman, SCHULMAN & KAUFMAN, L.L.C., Baltimore, Maryland, for Appellant. Kim Yvette Johnson, WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland; Michael Joseph Abromaitis, WRIGHT, CONSTABLE & SKEEN, L.L.P., Baltimore, Maryland, for Appellees. **ON BRIEF:** Stephen F. Fruin, WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

WILKINS, Circuit Judge:

Front Street Properties (FSP) appeals a decision of the district court affirming a ruling of the bankruptcy court that it lacked jurisdiction to adjudicate FSP's claim that a Chapter 11 bankruptcy debtor, Easton Petroleum Company, Inc. (Easton), was liable to FSP for damages arising out of Easton's breach of a commercial lease. Because we agree with FSP that the bankruptcy court possessed jurisdiction over this matter, we vacate the judgment of the district court and remand for further proceedings in accordance with this decision.

I.

Easton operated a number of service stations, including one on property leased from FSP in Milford, Delaware. In March 1991, Easton filed for Chapter 11 bankruptcy protection, and soon afterward,

2

Easton timely sought to assume the lease on the Milford property. See 11 U.S.C.A. § 365(a) (West 1993). Although the bankruptcy court failed to act on the motion for a considerable period of time, Easton continued in possession of the property, paying rent as agreed in the lease. More than four years later, but still prior to a ruling by the bankruptcy court on Easton's motion for approval to assume the lease, Easton informed FSP of its intent to make no further rental payments for periods after June 30, 1995 and moved to reject the lease. On August 4, 1995, Easton vacated the Milford property.

In the meantime, on July 17, 1995, the bankruptcy court approved Easton's amended plan of reorganization and entered a confirmation order. The order provided that it was to be without prejudice to the rights, if any, of FSP to oppose Easton's attempt to reject the lease. Additionally, the confirmation order expressly reserved jurisdiction in the bankruptcy court over a number of matters. Of particular relevance here, Article XVII of the order retained jurisdiction "to determine any and all controversies, adversary proceedings, contested matters and other litigated matters pending on the Confirmation Date, and disputes arising under, or in connection with, the Plan." J.A. 53.

Thereafter, the bankruptcy court ruled that Easton had exercised reasonable business judgment in seeking to have the court approve the assumption of the lease, and by order of May 6, 1996, the bankruptcy court approved Easton's assumption of the lease nunc pro tunc to September 10, 1991. The bankruptcy court then concluded that Easton had breached the lease, explaining that "[t]he expression of an intent not to pay rent beyond June 30 could be regarded as an anticipatory breach" and that "the later vacation triggered the damage clauses of the lease." J.A. 95. Also, the bankruptcy court found that FSP had established damages in the amount of $100,000 as a result of Easton's breach. Nevertheless, the bankruptcy court concluded that it possessed jurisdiction to award only a portion of these damages-- a pro rata portion of the rent attributable to the period from July 1 through July 16, 1995, which could be considered as an administrative expense of the bankruptcy estate. The bankruptcy court held that it lacked jurisdiction to award damages for what it characterized as "a post-confirmation breach" by Easton. J.A. 88. FSP appealed to the district court, which affirmed the ruling of the bankruptcy court.

3

II.

The post-confirmation powers of a bankruptcy court, generally speaking, are limited "to matters concerning the implementation or execution of a confirmed plan." Goodman v. Phillip R. Curtis Enters. (In re Goodman), 809 F.2d 228, 232 (4th Cir. 1987). But, a bankruptcy court may retain jurisdiction over additional matters in the confirmation order. See Official Dalkon Shield Claimants' Comm. v. Mabey (In re A. H. Robins Co.), 880 F.2d 769, 776 (4th Cir. 1989).

Apparently contending that the award of an administrative expense relates to the implementation of the confirmed plan, FSP first asserts that the bankruptcy court possessed jurisdiction to award all of the damages suffered by FSP because the entire amount, including amounts attributable to post-confirmation periods, should have been considered to be an administrative expense. We disagree. "[A]ny claim arising out of an assumed contract constitutes an administrative expense only if, and to the extent that, the contract conferred an actual benefit to the estate." Stewart Foods, Inc. v. Broecker (In re Stewart Foods, Inc.), 64 F.3d 141, 145 n.2 (4th Cir. 1995). Because the bankruptcy estate terminated on the date that Easton's plan of reorganization was confirmed--July 17, 1995--the lease on the Milford property could not have benefited the bankruptcy estate after that date. See 11 U.S.C.A. § 1141 (West 1993); Harstad v. First Am. Bank, 39 F.3d 898, 904 (8th Cir. 1994). Thus, rent for periods after the entry of the confirmation order is not an administrative expense.

We are similarly unpersuaded by FSP's contention that the bankruptcy court possessed jurisdiction to adjudicate FSP's claim for damages resulting from Easton's breach of the lease because the confirmation order retained jurisdiction to permit the bankruptcy court to determine the question of Easton's acceptance or rejection of the lease. The question of Easton's acceptance or rejection of the lease was expressly reserved in the confirmation order. But, that issue is distinct from, and does not incorporate, any issue relating to Easton's subsequent breach of the lease.

The dispositive issue then is whether the remaining provisions of the confirmation order retained jurisdiction to permit the bankruptcy court to consider FSP's claim. As noted above, the confirmation order

4

retained jurisdiction "to determine any and all controversies ... pending on the" date of plan confirmation--July 17, 1995. J.A. 53. Thus, if a controversy concerning Easton's breach of the lease was pending between FSP and Easton on the date the confirmation order was entered, the bankruptcy court did possess jurisdiction over the matter.

It is clear that prior to the entry of the confirmation order, Easton had three times written to FSP that it intended to repudiate the lease and to make no rental payments after June 30, 1995.* Under these circumstances, Easton committed a total breach of the lease prior to the confirmation of the plan, and as such, a controversy over the entire amount of FSP's damages for the lease was pending on the date of confirmation. Hence, we conclude that the confirmation order expressly retained jurisdiction over the controversy created by Easton's breach of the lease for the Milford property.

III.

In sum, we hold that the bankruptcy court possessed jurisdiction over FSP's claim that Easton committed a total preconfirmation breach of the lease. We also agree with the bankruptcy court that only $584.16 of the resulting damages was entitled to administrative expense priority. Although we presume that in light of the foregoing the remaining damages accepted as established by the bankruptcy court will be treated as a general unsecured claim against the estate, we are uncertain on the present record whether all relevant issues-- for example, mitigation of damages by FSP--have been addressed by the bankruptcy court. Consequently, we vacate the judgment of the district court and remand for proceedings consistent with this opinion.

VACATED AND REMANDED FOR FURTHER PROCEEDINGS
_____

*During the period from June through early August 1995, FSP and Easton were negotiating for Easton to purchase the Milford property. On three occasions prior to July 17, 1995, Easton informed FSP that Easton would pay no rent after June 30, 1995 and that if negotiations to purchase the property were not fruitful, Easton would evacuate the premises.

5